UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-CR-00547-RWS |
| | ) |
| RAVEN AINESIS POINTER, | ) |
| | ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

1. **PARTIES**

The parties are the Defendant Raven Ainesis POINTER, represented by defense counsel Matthew A. Radefeld, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), in exchange for the Defendant's voluntary plea of guilty to Count I (sexual exploitation of a child) of the Indictment, the Government agrees to dismiss Count II (distribution of child pornography) at the time of sentencing. The Government agrees that no further federal prosecution will be brought in this District relative to the Defendant's production and distribution of child pornography between March 1, 2022, and April 30, 2022, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. **The parties further jointly agree that at the time of sentencing the Government will request a sentence of no more than 300 months, and the Defendant will request a sentence of no less than 240 months.**

The Defendant agrees to forfeit to the United States all property subject to forfeiture under the applicable statute(s), and the Defendant knowingly and voluntarily waives any right, title, and interest in all items (including all data contained therein) seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States, including, but not limited to:

    a. Apple iPhone 12 Mini, IMEI: 355413860975578.

The Defendant agrees that said items may be disposed of by law enforcement officials in any manner.

3. **ELEMENTS**

As to Count I, the Defendant admits to knowingly violating Title 18, United States Code, Section 2251(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) Between March 1, 2022, and April 30, 2022, the Defendant employed, used, persuaded, induced, enticed, or coerced Victim 1 to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; (2) at the time, Victim 1 was a minor; and (3) the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means.

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On August 7, 2023, Homeland Security Investigations (HSI) executed a search warrant at a residence in Montgomery, Alabama. The target of the investigation (hereinafter, Suspect 1) was believed to have been engaging in the distribution of child pornography. During the execution of the warrant, Suspect 1 admitted to soliciting, receiving, and distributing child pornography. According to Suspect 1, he used social media application Telegram to converse with a female in St. Louis named "RAVEN P." Suspect 1 stated that "RAVEN P." sent him five or six videos of her two-year-old daughter. This information was corroborated by Telegram conversations between Suspect 1 and an unknown individual (hereinafter, Suspect 2), that were obtained by HSI in Alabama. In the conversation, Suspect 1 tells Suspect 2, "I'm talking to my St. Louis chick. She just showed me her lil girl's pussy." Suspect 1 then sends Suspect 2 the following videos:

  a. FILE NAME:1_5091396035318645303.mp4, a video approximately 14 seconds in length that depicts a close camera angle of the dark-skinned nude genitals of a child lying on her back. The camera shows the legs of the child and close-up of the diaper being pulled back by a dark-skinned female hand. The female's hand has a custom nail design that is unique, depicting a red and white wavy pattern with small crystals.

  b. FILE NAME:1_5091396035318645321.mp4, a video approximately 14 seconds in length that depicts a close camera angle of the dark-skinned nude genitals of a child laying on her stomach. The camera shows a close-up of her buttocks being pulled

3

apart by a dark-skinned female hand. The female's hand has a custom nail design that is unique, depicting a red and white wavy pattern with small crystals.

c. FILE NAME:1_5091396035318645322.mp4, a video approximately 14 seconds in length that depicts a close camera angle of the dark-skinned nude genitals of a child laying on her stomach. The camera shows a close-up of her dress being pulled upward, displaying her nude genitals. The female's hand has a custom nail design that is unique, depicting a red and white wavy pattern with small crystals.

Suspect 1 provided agents with enough information that they identified "RAVEN P" as Raven Pointer (hereinafter, the Defendant), with a last known address in St. Louis, Missouri. The case was subsequently forwarded to the HSI St. Louis office for follow-up investigation. On August 31, 2023, HSI learned that the Saint Louis County Police Department Special Investigations Unit/Missouri ICAC was already investigating the Defendant for a separate child pornography allegation. Detective Scott Woodward interviewed the Defendant as part of that investigation on December 30, 2022. The Defendant denied involvement in the allegations and provided consent for a search of her phone, a purple Apple iPhone 12 Mini with IMEI 355413860975578.

After conferring with Det. Woodward, he provided HSI with a copy of the forensic extraction taken from the iPhone 12 Mini. Special Agent (SA) Nick Zotos reviewed the extraction and focused on media files created by the device around March and April 2022, since that is when Suspect 1 received the videos from the Defendant. While reviewing the Defendant's phone, SA Zotos noted at least three image files and seven video files created between March 27, 2022, and April 19, 2022. The files depict the same distinctive red and tan/white acrylic nail style on a hand

4

with dark skin complexion, as can be seen in the child pornography videos recovered by HSI Birmingham. Several of the videos found on the Defendant's iPhone also use the same "sparkle" filter that were noted in the child pornography videos. Most notably, at least two of the videos found on the Defendant's iPhone clearly show the face of the Defendant as the one wearing the distinctive tan/white and red patterned acrylic nails.

On September 27, 2023, the St. Louis County Police Department and HSI executed a search warrant on the residence of the Defendant. Present at the residence was T.S., who identified himself as the father of the Defendant's child. Sanitized stills from the child pornography videos were shown to T.S., who identified the fingernails as belonging to the Defendant. T.S. also recognized the teal-colored walls as an upstairs bedroom at the Defendant's mother's house, where she was living at the time the videos were created. During a search of the residence, the same dress with unicorns that the child was wearing in one of the videos was located.

HSI went to the residence of the Defendant's mother in an attempt to locate her. The Defendant's mother and aunt were at the house and allowed the agents inside. SA Zotos took photographs of the upstairs bedroom and the teal-colored walls. While agents were at the residence, the Defendant called her mom and asked for a ride home from work. SA Zotos spoke with the Defendant on the phone, and she agreed to investigators coming to her location.

HSI investigators arrived at the parking lot of a McDonalds across the street from the Defendant's work. The Defendant agreed to a consensual interview in the investigators' vehicle, where her aunt was also present. SA Zotos showed the Defendant a photograph pulled from the Saint Louis County Police extraction of her phone, which showed her face and hand with the same distinctive manicured nails seen in the child exploitation videos. The Defendant confirmed it was her depicted in the photograph and that it was likely taken over a year prior. When asked

specifically if those nails might have been from around March or April of 2022, the Defendant agreed it was around that time. The Defendant admitted that she is the adult depicted in the video showing the touching of a young child's genitals, and the child is her two-year-old daughter, Victim 1.

In summary, between March 1, 2022, and April 30, 2022, the Defendant knowingly employed, used, persuaded, induced, enticed, or coerced Victim 1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce.

5. **STATUTORY PENALTIES**

The Defendant fully understands that for Count I, the maximum possible penalty provided by law for sexual exploitation of a child (production of child pornography), to which the Defendant is pleading guilty, is imprisonment of not more than 30 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not less than 5 years, and not more than life. **The Defendant fully understands that the crime to which a guilty plea is being entered, Title 18, United States Code, Section 2251(a), requires a mandatory minimum term of imprisonment of at least 15 years.**

Additionally, per 18 U.S.C. § 2259A, Defendant fully understands that for offenses committed on or after December 7, 2018, in addition to other assessments, the Court may impose an assessment for each count of no more than:

    (1)    $50,000.00 if convicted of child pornography production offense as defined by § 2259(c)(1).

6. **U.S. SENTENCING GUIDELINES (2023 MANUAL)**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal

6

History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

- a. **Chapter 2 Offense Conduct:**

    **(1) Count I: Sexual Exploitation of a Child (Production of Child Pornography)**

    (a) **Base Offense Level:** The parties agree that the base offense level is 32, as found in Section 2G2.1(a).

    (b) **Specific Offense Characteristics:** The parties recommend that the following Specific Offense Characteristics apply:

    (i) 4 levels should be added pursuant to Section 2G2.1(b)(1)(A), because the offense involved a minor who had attained the age of twelve years

    (ii) 2 levels should be added pursuant to Section 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act or sexual conduct

    (iii) 2 levels should be added pursuant to Section 2G2.1(b)(3), because the defendant knowingly engaged in distribution

    (iv) 4 levels should be added pursuant to Section 2G2.1(b)(4), because the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) an infant or toddler

    (v) 2 levels should be added pursuant to Section 2G2.1(b)(5), because the defendant was a parent, relative, or legal guardian of the minor

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

c. **Chapter Four Adjustments:** The parties agree that the following Chapter Four Adjustments apply: None.

d. **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

e. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 43.

f. **Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

g. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

   a. **Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

   **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the Defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the Defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

**8. OTHER**

**a. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. Some of these special conditions may include that Defendant not possess a computer or internet access, that Defendant not have contact with minors without the authorization of the Probation Officer, that Defendant participate in sexual offender counseling, and that Defendant not maintain a post office box. In addition, as a condition of supervised release, the Defendant shall initially register with the state sex offender registration in Missouri and shall also

register with the state sex offender registration agency in any state where Defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The Defendant shall comply with all requirements of federal and state sex offender registration laws.

These and any other special conditions imposed by the Court will be restrictions with which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

    **d. Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

Pursuant to Title 18, United States Code, Section 3014, for offenses occurring on or after May 29, 2015, and before September 30, 2023, the Court is required to impose an assessment of $5,000 on any non-indigent Defendant convicted of an offense under –

> (3)    Chapter 110 (relating to sexual exploitation and other abuse of children, including, but not limited to, 18 U.S.C. §2251(a) (production of child pornography) and 18 U.S.C. § 2252A (transportation, distribution, receipt, possession, or access with the intent to view child pornography));

The assessment imposed under 18 U.S.C. § 3014 is in addition to the mandatory special assessment imposed under 18 U.S.C. § 3013.

    **e. Possibility of Detention**: The Defendant shall be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Sections 3663A and 2259, an order of restitution is mandatory for all crimes listed in Sections 3663A(c) and 2259. Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Sections 3663A(b) and 2259 and the amount of loss agreed to by the parties, including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the Defendant has agreed to plead guilty. Under Section 2259(c)(3), the minimum amount of restitution per victim for each count of conviction is $3000 for crimes occurring on and after December 7, 2018.

g. **Forfeiture:** The Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The Defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

    a. Apple iPhone 12 Mini, IMEI: 355413860975578.

The Defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the Defendant when it is issued and will be part of the sentence. The Defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The Defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The Defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that Defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the Defendant acknowledges, fully understands, and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the

attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant understands that, by pleading guilty, the Defendant will be subject to federal and state sex offender registration requirements and that those requirements may apply for life. The Defendant understands that the Defendant must keep said registrations current, shall notify the state sex offender registration agency or agencies of any changes in name, place of residence, employment, or student status, or other relevant information. The Defendant shall comply with requirements to periodically verify in person said sex offender registration information. The Defendant understands that the Defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. If the Defendant resides in Missouri following release from prison, the Defendant will be subject to the registration requirements of Missouri state law. The Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction. Defense counsel has advised the Defendant of the possible sex offender registration consequences resulting from the plea.

The Defendant knowingly and voluntary waives any rights and defenses Defendant may have under the Excessive Fines Clause of the Eight Amendment to the United States Constitution

to the forfeiture of property in this proceeding or any related civil proceeding, special or other assessment, and any order of restitution.

If the Defendant is not a U.S. citizen, the guilty plea could impact the Defendant's immigration status or result in deportation. In particular, if any crime to which the Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the Defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

9-19-2024
Date

Nathan L. Chapman
Assistant United States Attorney

10-24-24
Date

Raven Ainesis Pointer
Defendant

10-24-24
Date

Matthew Radefeld
Attorney for Defendant

16